## UNITED STATES DISTRICT COURT
## DISTRICT OFM INNESOTA

Daniel A. Fox,

        Plaintiff,

v.

State Farm Mutual Automobile Insurance
Company,

        Defendant.

Case No. 13-cv-3231 (MJD/TNL)

**REPORT &
RECOMMENDATION**

James M. Sherburne, Sherburne Law Offices, PA, 5775 Wayzata Boulevard, Suite 670, St. Louis Park, MN  55416 (for Plaintiff); and

C. Todd Koebele and Brent D. Kettelkamp, Murnane & Brandt, PA, 30 East Seventh Street, Suite 3200, St. Paul, MN 55101 (for Defendant).

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on cross motions for summary judgment, Notice of Motion and Motion for Summary Judgment by Plaintiff Daniel A. Fox (ECF No. 18) and State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment (ECF No. 26).  These motions have been referred to the undersigned for a report and recommendation to the district court, the Honorable Michael J. Davis, Chief District Judge of the United States District Court for the District of Minnesota, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b).

A hearing was held on December 2, 2014.  James M. Sherburne appeared on behalf of Plaintiff Daniel A. Fox.  Brent D. Kettlekamp appeared on behalf of Defendant State Farm Mutual Automobile Insurance Company ("State Farm").

Based upon the record, memoranda, and the proceedings herein, **IT IS HEREBY RECOMMENDED** that the Notice of Motion and Motion for Summary Judgment by Plaintiff Daniel A. Fox (ECF No. 18) be **DENIED** and State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment (ECF No. 26) be **GRANTED**.

## II. BACKGROUND

This is a declaratory-judgment action concerning insurance coverage for a car accident that occurred in 2010.  (*See Compl.* ¶¶ 1, 4, 6, 7, 13, ECF No. 1-1.)  The parties agree that there are no issues of material fact in dispute.  (*See* Pl.'s Mem. in Supp. at 2, ECF No. 15; Def.'s Mem. in Opp'n at 3 n.2, ECF No. 22.)

### A.  Insurance Policy

Fox has been a State Farm customer since 1988.  (Pl.'s Mem. in Supp. at 3.)  The policy in dispute covered a six-month period between June 5 and December 5, 2010. (Def.'s Mem. in Opp'n at 3.)

On November 1, State Farm sent Fox an "Auto Renewal" letter.  (Pl.'s Mem. in Supp. at 3; Ex. A to Aff. of James M. Sherburne, ECF No. 19-1.)  The Auto Renewal letter notified Fox of the renewal premium amount due for the next six-month period, December 5, 2010, through June 5, 2011.  (Ex. A to Sherburne Aff.)  The Auto Renewal letter stated that the premium was due on December 5, 2010, and "[t]his policy *expires* on the date due if the premium is not paid."  (*Id.* (emphasis added).)

Fox did not pay the premium by December 5.  (Def.'s Mem. in Opp'n at 8.)  On December 20, State Farm sent Fox an "Expiration Notice" letter.  (Pl.'s Mem. in Supp. at 4; Def.'s Mem. in Opp'n at 8; Ex. B to Sherburne Aff, ECF No. 19-1.)  The Expiration Notice informed Fox that his policy expired on December 5.  Under the heading "EXPIRATION DATE," the Expiration Notice showed "DECEMBER 5, 2010."  (Ex. B to Sherburne Aff.)  Further, the Expiration Notice stated: "Your POLICY expired at 12:01 A.M. Standard Time on the Expiration Date shown." (*Id.*)  The Expiration Notice offered Fox an option to continue coverage, stating that "[p]ayment within 22 days after Expiration Date will provide coverage until June 5, 2011." (*Id.*)  The Expiration Notice also stated:

> If paid after 22 days from the Expiration Date you will be informed if we accept your payment and if so, the exact date and time coverage is again effective.  There is no coverage between the date and time of expiration and the date and time of your coverage is [sic] again effective.

(*Id.*)  In sum, according to the Expiration Notice, Fox would be covered under the policy from December 5, 2010, through June 5, 2011, *if* he paid the renewal premium by *December 27*.

## B.  Accident & Premium Payment

On *December 29*, Fox was injured in a car accident in which another driver "pulled in front of [him]."  (Pl's Mem. in Supp. at 2.)  The following day, *December 30*, Fox paid the premium at the office of his local State Farm agent.  (*Id.* at 4.)  This payment was more than 22 days from the December 5, 2010 expiration date of Fox's policy.  On January 4, 2011, State Farm sent Fox a "Declarations Page," informing him

that the new policy period was from December 30, 2010, through June 30, 2011.  (Ex. I

to Affidavit of Brent D. Kettelkamp, ECF No. 23-2.)

State Farm denied coverage for the December 29 accident, asserting Fox's

insurance policy had expired due to his failure to pay the renewal premium and was out

of force at the time of the accident.  (*See* Pl.'s Mem. in Supp. at 1; Def.'s Mem. in Opp'n

at 11.)

### C.  Relevant Policy Language

The parties dispute whether Fox's policy expired on its own terms or was

cancelled by State Farm.  State Farm contends that the policy expired.  The policy does

not define the term expiration or set forth the circumstances in which expiration occurs.

(Pl.'s Mem. in Supp. at 6.)   Fox contends that State Farm cancelled the policy for

nonpayment of the renewal premium.

In relevant part, the general terms of Fox's policy provided:

### 1. When Coverage Applies

The coverages provided by this policy are shown on the
Declarations Page and apply to accidents and ***losses*** that
occur during the policy period.  The policy period is shown
on the Declarations Page and is for successive periods of
six months each for which the renewal premium is paid.
The policy period begins and ends at 12:01 AM Standard
Time at the address shown on the Declarations Page.

. . .

### 6. Renewal

***We*** agree to renew this policy for the next policy period
upon payment of the renewal premium when due, unless

4

*we* mail or deliver a nonrenewal notice or a cancellation notice as set forth in 7. and 8. below.

### 7. Nonrenewal

If *we* decide not to renew this policy, then, at least 60 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page.

### 8. Cancellation

#### a. How You May Cancel

*You* may cancel this policy by providing to *us* advance notice of the date cancellation is effective.  *We* may confirm the cancellation in writing.

#### b. How and When We May Cancel

*We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page.  The notice will provide the date cancellation is effective.

(1) If *we* mail or deliver a cancellation notice:

    (a) during the first 59 days following this policy's effective date; or

    (b) because the premium is not paid when due,

then the date cancellation is effective will be at least 10 days after the date *we* mail or deliver the cancellation notice.

Otherwise, the date cancellation is effective will be at least 30 days after the date *we* mail or deliver the cancellation notice.

(2) After this policy has been in force for more than 59 days, *we* will not cancel this policy before the end of the current policy period unless:

(a) the premium is not paid when due; . . . .

(Ex. C to Sherburne Aff., ECF No. 19-1 ("Policy").[1])

## III. ANALYSIS

### A.  Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party."  *State Farm Fire & Cas. Co. v. ARC Mfg.*, No. 12-cv-690 (JRT/JJG), 11 F. Supp. 3d 898, 903 (D. Minn. 2014) [hereinafter *ARC Mfg.*] (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts."  *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  On cross motions for summary judgment, the Court views the record in the light most favorable to the plaintiff when considering the defendant's motion and *vice versa*.  *Weber v. The Travelers Home & Marine Ins. Co.*, No. 10-cv-2142 (RHK/LIB), 801 F. Supp. 2d 819, 825 (D. Minn. 2011).  "Insurance disputes are particularly well

---

[1] The parties' dispute concerns only the "General Terms" section of the policy.  When citing specific provisions of the policy in the future, the Court will refer to the particular paragraph of the General Terms section of the policy, e.g., Policy ¶ 1.

suited for summary judgment because the proper construction of an insurance contract is always an issue of law for the court." *Chicago Ins. Co. v. City of Council Bluffs*, 713 F.3d 963, 969 (8th Cir. 2013) (quotation omitted); *accord ARC Mfg.*, 11 F. Supp. 3d at 903 ("The interpretation of an insurance policy is a matter of law which the Court can determine on summary judgment.").

"'State law governs interpretation of insurance policies.'" *Network F.O.B., Inc. v. Great Am. Ins. Co. of New York*, 13-cv-500 (DSD/FLN), ___ F. Supp. 2d ____, 2014 WL 3048369, at *2 (D. Minn. July 7, 2014) (quoting *Nat'l Union Fire Ins. Co. of Pittsburg v. Terra Indus., Inc.*, 346 F.3d 1160, 1164 (8th Cir. 2003) (citation omitted)). The policy states, and the parties agree, that Minnesota law governs the interpretation of the policy. (Policy ¶ 15(a).) "In Minnesota, the interpretation of an insurance policy is a question of law." *Network F.O.B.*, 2014 WL 3048369, at *2; *accord Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). "The court interprets an insurance policy in accordance with general principles of contract construction, giving effect to the intent of the parties." *Network, F.O.B.*, 2014 WL 3048369, at *2; *accord Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814, 819 (8th Cir. 2012). "Provisions in an insurance policy are to be interpreted according to both plain, ordinary sense and what a reasonable person in the position of the insured would have understood the words to mean." *Wolters*, 831 N.W.2d at 636 (quotation omitted). "[U]nambiguous words are given their plain, ordinary, and popular meaning, and ambiguous language is construed in favor of the insured." *Owners Ins. Co.*, 695 F.3d at 816 (citations omitted) (quotation omitted). "Language in a policy is ambiguous if it is susceptible to two or more

7

reasonable interpretations." *Wolters*, 831 N.W.2d at 636. "[T]he court guards against invitations to find ambiguity where none exists." *Network, F.O.B.*, 2014 WL 3048369, at *2 (quotation omitted).

### B. Analysis

Fox argues that his policy was for successive six-month periods and such policy could only come to an end through cancellation. Fox asserts that State Farm did not follow the policy's cancellation procedures when the renewal premium was not paid and Minnesota law required State Farm to provide Fox with ten-days' notice before cancelling his policy due to nonpayment of the renewal premium. State Farm counters that Fox's policy expired, per its terms, on December 5 and it did not cancel the policy.

### 1. Successive Six-Month Periods

Fox argues that his policy could not come to an end except through cancellation because the policy was for *successive* six-month periods. Fox asserts that "a policy that is for 'successive periods of six months' can[not] 'expire' as there would always be a successive six-month period." (Pl.'s Mem. in Supp. at 6; *see id.* at 10 ("A policy for 'successive six[-]month periods' does not have an expiration date."; *see also* Pl.'s Reply at 1, ECF No. 24; Pl.'s Mem. in Opp'n at 5, ECF No. 33.)

First, Fox's contention is belied by the policy language itself which states the policy period "ends at 12:01 AM Standard Time at the address shown on the Declarations Page." (Policy ¶ 1.) Second, the policy was only successive when the renewal premium is paid on time. As Fox himself acknowledges, "[a]s long as the premium is paid[,] the successive six-month periods continue. The policy ends only for failure to pay the

premium." (Pl.'s Mem. in Supp. at 10.)   According to the terms of Fox's policy, the policy was for successive six-month periods "for which the renewal premium is paid." (Policy ¶ 1.)  Under the plain language of the policy, there was no successive six-month period of coverage if the renewal premium was not paid by the due date.  It is undisputed that Fox failed to pay timely the renewal premium for the successive six-month period of December 5, 2010, through June 5, 2011.   A reasonable person would not have understood coverage to continue under the policy into the next successive six-month period if the renewal premium was not paid when due.  Thus, Fox's contention that his policy continues for successive six-month periods without end unless cancelled is without merit.

### 2.  Expiration vs. Cancellation

The heart of Fox's argument is that State Farm *cancelled* his policy due to nonpayment of the renewal premium.  State Farm maintains that Fox's policy *expired* on December 5 at the end of the policy period when the renewal premium was not paid.

The manner in which Fox's policy came to an end is significant.  If the policy was cancelled, State Farm had certain notice obligations under both the policy and Minnesota law.  (Policy ¶ 8.)  *See* Minn. Stat. §§ 65B.15 (cancellation of coverage "during policy period" for nonpayment of premium ineffective without notice), 65B.16 ("at least ten days' notice of cancellation" required when "nonpayment of premium is the reason for cancellation"); *cf.* Minn. Stat. § 65B.17, subd. 1 (notice of nonrenewal not required "in case of nonpayment of the renewal premium").  While cancellation is discussed in the policy, (*see* Policy ¶ 8), the term itself is not defined.

Section 65B.15 and the body of case law interpreting it make clear that cancellation of an insurance policy occurs "*during the policy period* of any policy." Minn. Stat. § 65B.15, subd. 1; *accord Royal Ins. Co. v. Western Cas. Ins. Co.*, 444 N.W.2d 846, 848 (Minn. App. 1989) [hereinafter *Royal*] ("The legislature has provided that the insurer's cancellation *during* the term of a policy shall not be effective unless the required notice is given." (citing Minn. Stat. § 65B.15)); *see also Martinson v. Iowa Kemper Ins. Co.*, 390 N.W.2d 447, 450 (Minn. App. 1986) ("The supreme court observed that there must have been a policy in effect if the insurer was threatening to cancel it.").

In *Royal*, the Minnesota Court of Appeals held that the statutory notice requirements for cancellation were inapplicable because the insurance policy was not terminated during the term, but expired at the end of the policy period.  444 N.W.2d at 847, 848.  Like Fox, the insured did not pay her premium by the due date.  *Id.* at 847. Similar to State Farm's Expiration Notice, the insurer sent the insured a notice "stating that if her premium reached [the insurer] within 15 days of the November 10 due date, her coverage would be continued.  If not, her coverage would cease as of the due date." *Id.*   The insured also received a letter from her insurance agent "stating that the automobile policy's '[p]remium must be paid before November 25, 1983 in order to keep continued coverage.'"  *Id.*   And, like Fox, the insured failed to pay the premium within the grace period offered by the insurer.  *Id.*   The Minnesota Court of Appeals held that "[w]hen [the insurer] did not receive the renewal premium from [the insured] by November 25, 1983, by the terms of the contract and consistent with the notices it sent, [the] insurance expired as of November 10 . . . ."  *Id.*  Thus, when Fox failed to pay the

renewal premium by the original due date and within the grace period, his policy too expired as of the December 5 due date.

The insured argued, as Fox does now, that the insurer "failed to give the statutory notice of cancellation prescribed by Minn. Stat. § 65B.15-.16" and therefore her coverage remained in effect. *Royal*, 444 N.W.2d at 848. Citing *Dairyland Insurance Co. v. Neuman*, the Minnesota Court of Appeals observed that "[i]f a policy has a term of less than six months, notice of cancellation must be given to terminate the policy." *Id.* (citing 338 N.W.2d 37, 40 (Minn. 1983)). Because the insured's policy was "for a term of six months and was not terminated during the term," however, the Minnesota Court of Appeals concluded that "the notice requirements of cancellations are inapplicable." *Id.* The same reasoning applies in the instant case.

Similarly, in *Block v. Mutual Service Casualty Insurance Co.*, the Minnesota Court of Appeals again held that in "case[s] involv[ing] termination due to nonpayment of a renewal premium, . . . no statutory termination notice is required." No. C4-01-1974, 2002 WL 554403, at *1 (Minn. App. Apr. 16, 2002). Like Fox, the insured received a renewal notice offering to continue the policy for the next six months if the premium was paid on or before the due date. *Id.* Like State Farm's Auto Renewal, this renewal notice informed the insured that coverage would end on the due date unless the premium was paid on or before the due date. *Id.* The insured failed to pay the premium by the due date.

As State Farm did with Fox, the insurer sent the insured an expiration notice, stating that her insurance expired on the due date because the premium had not been paid.

The insurer had an "internal policy of offering a grace period to its insureds who pay their premiums within nine days." *Id.* at *2. The insured paid her premium 18 days after the due date. *Id.* at *1. The Minnesota Court of Appeals held that the "renewal and expiration notices were legally sufficient to allow [the insurer] to terminate coverage for nonpayment of the renewal premiums. Although the notices were part of premium bills, they contained clear language informing [the insured] that coverage expired as of [the premium due date], and that she was without coverage as of that date." *Id.* at *2.

Additionally, in *Parrott v. Grinnell Mutual Reinsurance Co.*, the Minnesota Court of Appeals concisely stated:

> In the case of non-payment of a renewal premium, an insurer may terminate a policy without notice to the insured. *Dairyland Ins. Co. v. Neuman*, 338 N.W.2d 37, 39 (Minn. 1983) (citing Minn. Stat. § 65B.17 (1982)). An insurer may reinstate a policy if the insured complies with the conditions specified in the policy. *Sellwood v. Equitable Life Ins. Co. of Iowa*, 230 Minn. 529, 533, 42 N.W.2d 346, 350 (1950). Reinstatement allows the original policy to remain in force without having to create a new policy. *Id.* Here, [the insurer] offered [the insured] the opportunity to continue her coverage, but she failed to take advantage of this opportunity. Because [the insured] failed to make a payment in the designated "grace period," [the insurer] was entitled to end the policy without further notice to [the insured]. *See Royal Ins. Co. v. Western Cas. Ins. Co.*, 444 N.W.2d 846, 847 (Minn.App.1989) (failure to pay premium by end of grace period resulted in retroactive termination of policy).

No. C6-02-2179, 2003 WL 21652502, at *2 (Minn. App. July 15, 2003).

Fox argues that *Royal* and *Block*, and presumably by extension *Parrott*,[2] are distinguishable because they "did not involve policies that were for 'continuous six month periods' as did the Fox policy." (Pl.'s Reply at 5.) Fox argues that this "is a key distinction because the 'continuous period of six months' creates an expectation that the policy is continuing and that if he fails to pay the premium he will receive notice." (*Id.*) But, as previously discussed, Fox's reading of the successive-six-month-period language in the policy is not how a reasonable person would understand the policy to operate. The policy explicitly conditioned "successive" coverage on the payment of the renewal premium. Fox admits that he did not pay the renewal premium by the December 5 due date.

Relying on *Jorgensen v. Knutson*, 662 N.W.2d 893 (Minn. 2003), and *Martinson*, Fox asserts that the statutory notice provisions still apply. Notably, the question in *Jorgensen* was not whether the statutory notice was required, but how to compute the ten-days' notice requirement contained in Minn. Stat. § 65B.16. 662 N.W.2d at 897 ("[W]e must decide whether the default statutory time-computation method established in Minn. Stat. § 645.15 applies to the ten-days' notice requirement for automobile insurance policy cancellations as described in Minn. Stat. § 65B.16.") In *Jorgensen*, the insurer "sent the [insureds] a renewal insurance policy and invoice for the period of October 26, 1993 through April 26, 1994. The invoice contained an 'IMPORTANT NOTICE' instructing the [insureds] not to pay the premium until they received their bill." *Id.* at 896. Although not entirely clear, it appears that the insureds were paying their premium in installments

---

[2] Neither party discusses *Parrott*.

as the Minnesota Supreme Court states that the insureds "failed to make their *first* premium payment for the relevant policy period." *Id*. at 895 (emphasis added). "When no premium payment had been made by or after the October 26, 1993 due date, [the insurer] sent a notice of cancellation on November 10 warning [the insureds] that coverage would cease at 12:01 a.m. on November 22, 1993, unless the *full* policy premium was received before that date." *Id.* at 896 (emphasis added). This November 10 cancellation notice was sent during the October 26, 1993 through April 26, 1994 policy period. Ultimately, the Minnesota Supreme Court determined that, under the time-computation statute, the insurer had shorted the insureds one-days' notice and the policy was effectively cancelled as of November 23 rather than on November 22 as stated in the cancellation notice. *Id.* at 899-900, 903-04.

Relying on *Jorgensen*, Fox contends that if the Expiration Notice sent on December 20 "is considered to be the equivalent of the cancellation notice required by Minn. Stat. § 65B.16," he received only seven-days' notice of cancellation (measured from December 20 to 27, the 22nd day after the December 5 expiration date) rather than the ten days provided for in Minn. Stat. § 65B.16. (Pl.'s Mem. in Supp. at 8.) Therefore, Fox contends the December 29 accident was covered under the policy as ten days measured from the Expiration Notice is December 30, the day he made a payment at his agent's office. (*Id.*) The fact that *Jorgensen* dealt only with the counting of days under Minn. Stat. § 65B.16, rather than the application of Minn. Stat. § 65B.15 and notice requirements in general, is significant. Section 65B.16 provides that

> [n]o notice of cancellation or reduction in the limits of
> liability of coverage of an automobile insurance policy *under
> section 65B.15* shall be effective unless the specific
> underwriting or other reason or reasons for such cancellation
> or reduction in the limits of liability of coverage are stated in
> such notice . . . ; when nonpayment of premium is the reason
> for cancellation . . . at least ten days' notice of cancellation,
> and the reasons for the cancellation, shall be given.

Minn. Stat. § 65B.16 (emphasis added).  Section 65B.16 applies only in a section 65B.15

circumstance.  *Id.*  Section 65B.15 applies to "cancellation or reduction in the limits of

liability of coverage *during the policy period*."  Minn. Stat. § 65B.15, subd. 1 (emphasis

added).  The *Jorgensen* cancellation notice was sent during the policy period after the

first installment payment was not received.  Accordingly, the statutory cancellation notice

requirements applied.   The Court agrees with State Farm that *Jorgensen* is

distinguishable from the present case because termination of the insureds' coverage

occurred during the policy period.  Fox's policy expired at the end of the policy period

when he failed to pay the renewal premium.  State Farm did not cancel Fox's policy

during the policy period.  Fox's policy expired on December 5.

In *Martinson*, the insured "received a statement asking him to pay premiums in

installments or in full for the period of June 8, 1984, to December 8, 1984.  This payment

was due by June 8, 1984."  390 N.W.2d at 448.  The insured failed to pay by June 8 and,

"[o]n June 13 . . . , [the insurer] sent [the insured] a 'premium reminder notice' that once

again asked for payment, but this time listed a payment due date of June 28."  *Id.*  The

same day, however, the insurer also "issued [the insured] an amended policy changing

the vehicle covered under the policy"; "informed [the insured's] lien holder of this

15

change"; and "issued [the insured] an identification card showing he had a policy effective from June 8, 1984, to December 8, 1984." *Id.*  On July 5, the insured paid his premium through his local insurance agent. *Id.* at 449.  Approximately, ten days later the insured reported that he had been in an accident on July 13. *Id.*  The insurer denied the claim, stating that coverage had expired on July 8. *Id.*

At the outset, the Minnesota Court of Appeals noted that Minn. Stat. § 65B.16 "requires that an insurer give ten days notice if it intends to cancel an insurance contract *during a policy period* for nonpayment of a premium" and Minn. Stat. § 65B.17 states that "no notice is required if an insurer does not renew a policy because of nonpayment of the renewal premium." *Id.*  Looking at the totality of the circumstances, the Minnesota Court of Appeals concluded that "the conduct of the parties demonstrates that the insurance policy was in effect and that [the insured] was entitled to ten days notice of cancellation under Minn. Stat. § 65B.16." *Id.* at 450.  The Court will address the totality-of-the-circumstances argument momentarily.  Nevertheless, *Martinson* does not stand for the proposition that an insured is *statutorily entitled* to notice of cancellation when the insurer does not renew a policy due to nonpayment of the renewal premium.  In fact, *Martinson* states the exact opposite: "Under section 65B.17, no notice is required if an insurer does not renew a policy because of nonpayment of the renewal premium." *Id.* at 449.

As the above discussion demonstrates, the plain and ordinary meaning of cancellation is an act taken to end the policy *during* the policy term.  To cancel something is "to destroy [its] force, effectiveness, or validity." *Meriam-Webster's*

*Collegiate Dictionary* 179 (11th ed. 2003); *accord The American Heritage Dictionary of English Language* 278 (3d ed. 1996) (to cancel is "[t]o annul or invalidate").  Something cannot be cancelled if it is no longer in existence.  As the Minnesota Supreme Court observed in *Cormican v. Anchor Casualty Co.*, "[i]t is absurd to give notice of the cancellation of a nonexistent [insurance] contract."  81 N.W.2d 782, 788 (Minn. 1957); *see id.* ("threat of cancellation carried with it the necessary implication that the [insurance] contract was then in force"); *Martinson*, 390 N.W.2d at 450 ("The supreme court observed that there must have been a policy in effect if the insurer was threatening to cancel." (citing *Cormican*, 81 N.W.2d at 788)).

In contrast, a policy expires, under the plain and ordinary meaning of the term, when it "come[s] to an end."  *Meriam-Webster's Collegiate Dictionary* 440; *accord The American Heritage Dictionary of English Language* 440 (to expire is "to come to an end").  The policy's general terms described the policy period as "begin[ning] and end[ing] at 12:01 AM Standard Time at the address shown on the Declarations Page." (Policy ¶ 1.)  *See Royal*, 444 N.W.2d at 847 (coverage "expired" at end of policy period); *Block*, 2002 WL 554403, at *2 (same).

Fox's entire argument that his policy can only come to an end through cancellation is built on the faulty premise that "[a] policy for 'successive six month periods' does not have an expiration date."  (Pl.'s Mem. in Supp. at 10; *see also* Pl.'s Reply at 5.)  Fox's policy expressly stated that the policy period provided on the Declarations Page "begins and ends at 12:01 AM Standard Time" at the insured's address.  (Policy ¶ 1.)  As already discussed, a reasonable person would not have understood coverage to continue under the

policy past the end date into the next successive six-month period if the renewal premium was not paid when due.

Moreover, to adopt Fox's construction of the term cancellation would render several other provisions of the policy superfluous.   An insurance "policy must be construed as a whole." *Capitol Indem. Corp. v. Ashanti*, No. 12-cv-1401 (PJS/JJG), 28 F. Supp. 3d 877, 880 (D. Minn. 2014).   "Each word in the [insurance p]olicy should be interpreted to have a meaning, rather than to be redundant or superfluous." *Network, F.O.B.*, 2014 WL 3048369, at *3.   If the policy could only come to an end through cancellation, there would be no need to define the beginning and end of the policy period, (Policy ¶ 1), or discuss renewal and nonrenewal of the policy, (Policy ¶¶ 6, 7), as the policy would continue in perpetuity until it was cancelled.   When these provisions are read with the plain and ordinary meaning of cancellation in mind, however, each provision describes distinct rights and obligations under the policy.   When the policy period has a beginning and end, the renewal and nonrenewal provisions describe two different scenarios at the end of the policy period: an option to continue coverage for another six-month period upon payment of the renewal premium (renewal) or the insurer's election not to continue the coverage relationship (nonrenewal).   Whereas renewal and nonrenewal come into play at the end of the policy period, the cancellation provisions discuss how either party can terminate the coverage relationship *during* the policy period.

Therefore, applying the plain and ordinary meanings of cancellation and expiration, Fox's policy expired at the end of the policy period on December 5 when he

18

failed to pay the renewal premium.   State Farm did not, and could not, cancel Fox's policy after the policy period ended on December 5 because there was no longer a policy in effect.   As a matter of law, State Farm was not required to provide notice of cancellation under Minn. Stat. §§ 65B.15 and 65B.16 or the terms of the policy.

### 3.   Totality of the Circumstances

Fox is correct that "'[t]he ultimate determination of whether the insurance was in effect depends upon all the facts, including the prior course of conduct between the insured and the insurer, as well as the action of the insured after being notified of the unsolicited renewal of the policy.'"   *Martinson*, 390 N.W.2d at 449 (quoting *St. Paul Fire & Marine Ins. Co. v. Bierwerth*, 175 N.W.2d 136, 142 (Minn. 1969)); *accord Parrott*, 2003 WL 21652502, at *3 (same).   (*See* Pl.'s Opp'n at 4-7; *see also* Pl's Reply at 2-5.) "A binding renewal contract cannot be effected without the mutual assent of the parties." *Royal*, 444 N.W.2d at 848 (citing *Bierwerth*, 175 N.W.2d at 141); *accord Okrakene v. Governing Bd. Dirs. Minn. FAIR Plan*, No. A05-1283, 2006 WL 696496, at *2 (Minn. App. Mar. 21, 2006) (stating it is "long-settled law that a binding renewal contract cannot be effected without mutual assent of the parties" (quotation omitted)).   "[T]here may be an effective contract of insurance only if its existence may be inferred from the conduct of the parties." *Royal*, 444 N.W.2d at 848.

The payment of an insurance premium "is only one factor to be considered" in deciding whether a particular insurance policy was in effect.   *Bierwerth*, 175 N.W.2d at 142.   Courts also take into account the length of the relationship between the insured and the insurer as well actions by both the insured (such as procuring insurance from another

carrier) and the insurer (such as issuing a new policy).   In *Bierwerth*, the Minnesota Supreme Court found the "procurement by the insured of insurance with another company" to be a "crucial fact" indicating that the insured did not intend to renew the policy.   *Id.*; *cf. Martinson*, 390 N.W.2d at 450 ("Martinson made no attempt to seek coverage from another insurer and never indicated that he wished to change his insurance carrier."); *Parrott*, 2003 WL 21652502, at *3 ("Respondent did not seek out any alternative insurance policy.").   In *Royal*, the insured had a "sporadic[]" relationship with the insurer in the year preceding the accident.   444 N.W.2d at 847.   The insurer repeatedly accepted the insured's late payments.   *Id.*   After the insured submitted a late renewal payment for the policy period immediately preceding the accident, however, the insurer issued the insured a new insurance contract commencing on the date of payment and continuing for the next six months, resulting in a lapse of coverage between when the renewal payment was originally due and the commencement of the new policy period as of the date of payment.   *Id.*   Together, these facts created an inference that the insured "knew her contract would expire by its terms if she did not submit the renewal premium." *Id.* at 848.

In *Martinson*, the insurer issued—after the date the renewal premium was due—an amended insurance policy as well as new identification cards reflecting the same policy period for which the insured failed to pay his renewal premium on time.   390 N.W.2d at 450.   Additionally, in the letter denying the claim, the insurer stated that the policy had expired on July 8, 1984, "one month after the initial policy period ended," which

"suggest[ed] that the parties believed there was a policy in effect at least until July 8 . . . ." *Id.* Similarly, in *Parrott*:

> [F]ollowing [the] February 17 [renewal-premium due date], [the insured's] insurance agent processed her request to change coverage from other cars to a Mustang, and on March 1, (five days after [the insurer] told [the insured] that her policy would be non-renewed retroactive to February 17 if a premium payment was not received by March 12), [the insurer] mailed . . . an amended policy statement showing that the policy was changed to cover the Mustang, telling her that this was not a bill and she would be billed separately, and the policy period for the Mustang was February 17, 2001 to August 27, 2001.

2003 WL 21652502, at *3.

In arguing that the totality of the circumstances results in coverage, Fox points to (1) the policy's successive six-month-period and cancellation language; (2) his own actions, i.e., he had a lengthy relationship with State Farm, he did not intend for the policy to end, he did not seek coverage with another company, and his history of making payments on an informal basis at his agent's office; and (3) State Farm's past course of dealing, i.e., accepting of his late payments and continuing coverage. (Pl.'s Mem. in Opp'n at 5-6.)

Fox's reliance on the language of the policy is unavailing. The Court has already concluded that Fox's proffered interpretation of cancellation is inconsistent with how a reasonable person in his position would understand the policy to operate.

It cannot be disputed that the length of Fox's relationship with State Farm and the fact that he did not obtain insurance with another carrier suggest Fox intended to continue coverage with State Farm. *See Martinson*, 390 N.W.2d at 450; *Parrott*, 2003 WL

21

21652502, at *3; *cf. Bierwerth*, 175 N.W.2d at 142.   Further, in his deposition, Fox

testified that he did not intend his policy with State Farm to end.  (Ex. H to Sherburne

Aff., ECF No. 19-1.)   Given that the Court must view the record in the light most

favorable to Fox when considering State Farm's motion, the Court accepts this evidence

of Fox's subjective intent notwithstanding the undisputed objective facts of notice

provided by State Farm to Fox and Fox's subsequent inaction until after an accident had

occurred.  *See ARC Mfg.*, 11 F. Supp. 3d at 903; *Weber*, 801 F. Supp. 2d at 825.

Turning to State Farm's conduct, the only action State Farm took after the passing

of the renewal premium due date was to send Fox the Expiration Notice, informing Fox

that he no longer had coverage and could still obtain coverage if he wished to do so.

Unlike *Martinson* and *Parrott*, here there is a notable absence of affirmative conduct by

the insurer suggesting that coverage continued despite the insured's failure to pay the

renewal premium.  In both *Martinson* and *Parrott*, the insurer's actions after the renewal

premium due date passed affirmatively suggested that the existence of an insurance

contract despite the insured's failure to pay the renewal premium on time.

Fox asserts that he had previously been late on his premium payments, typically

paying them on an informal basis at his agent's office, and State Farm still continued his

coverage.   Specifically, Fox states that he "had been late before and received a

cancellation notice," and, "between 2002 and 2010[, he] had been late making his

premium payment six other times [; o]n those occasions[,] he received an Expiration

Notice[;]  . . . and he continued to be an insured of State Farm."  (Pl.'s Reply at 6.)  The

cancellation notice State Farm sent Fox in 2002 states that State Farm "ha[s] not received

the full amount required to *keep* this policy in force."   (Ex. G to Sherburne Aff. (emphasis added), ECF No. 19-1.)   This is consistent with *Jorgensen*, wherein a cancellation notice was required because the policy was cancelled within the policy period for nonpayment of the premium.

As for the Expiration Notices Fox received between 2002 and 2010, they are all consistent with the Expiration Notice he received in connection with the policy period at issue in this case.   (*Compare* Ex. B to Sherburne Aff. *with* Ex. J to Suppl. Aff. of James M. Sherburne, ECF No. 34.)   Each notified Fox that his policy had expired.   (Ex. J to Suppl. Sherburne Aff.)   Each further notified Fox that payment within 22 days of the expiration date would provide coverage for a six-month period from the expiration date, which presumably was the original proffered policy period.   (*Id.*)   The fact that Fox had received Expiration Notices in the past is consistent with his testimony that he typically paid his premiums on an informal basis at his agent's office.   And, as State Farm points out, "[t]his shows that [Fox] knew what he had to do when he received an expiration notice . . . ."   (Def.'s Reply at 12, ECF No. 35.)

But, more importantly, there is no evidence in the record that there was a history of (1) State Farm sending Fox an Expiration Notice; (2) Fox waiting to pay his bill *until after the due date provided in the Expiration Notice passed*; *and* (3) State Farm considering the policy to be in force as of the original renewal premium due date.   In fact, Fox's statement that, in the past, after he received an Expiration Notice and subsequently paid the renewal premium, he remained "an insured of State Farm" is exactly what occurred in this case.   State Farm accepted Fox's late payment and issued him a new

policy, effective as of the date of Fox's payment. *See Royal*, 444 N.W.2d at 847 (insurer issued new insurance contract commencing on date of actual premium payment when insured failed to pay renewal premium by original due date). There is no evidence in the record, however, that State Farm had ever accepted a payment from Fox after the due date set forth in the Expiration Notice had passed *and* reinstated an expired policy *retroactive* to the original renewal premium due date.

State Farm offered Fox an opportunity to continue coverage under the policy by paying the renewal premium. Fox was a long-time customer of State Farm and knew the renewal premiums had to be paid in order for coverage to continue. "[Fox] did not manifest any intent to accept [State Farm's] renewal offers," either prior to the expiration of the policy period or during the grace period. *Royal*, 444 N.W.2d at 848. When Fox failed to pay the renewal premium in a timely fashion, his policy expired at the end of the policy period according to its terms; State Farm was not required to and in fact could cancel Fox's policy because it no longer existed. *Id.*; *Parrott*, 2003 WL 21652502, at *2; *Block*, 2002 WL 554403, at *2.

The Court is empathetic to Fox's situation. But the position Fox takes

> is unreasonable because its logical extension is that, by sending renewal declarations as part of an offer of coverage, the insurer becomes bound to cover the property, at least until it can cancel, even though it never received any payment for that coverage and despite its express statement that the policy would not be renewed without a premium payment.
> Furthermore, . . . it would mean that a former insured who did not desire to renew his policy would nevertheless have coverage forced upon him simply because the insurer sent renewal declarations. If the insured then had this forced coverage for a period of time, presumably the insurer could

> sue him for the cost of that coverage.   Sound public policy
> dictates that contracts, being a matter of mutual assent, may
> not be forced upon the parties.

*Okrakene*, 2006 WL 696496, at *3.   When considering all of the evidence in the record, the Court cannot infer mutual assent and the existence of an insurance contract from the conduct of the parties.   There is simply no evidence in the record that State Farm repeatedly accepted late renewal premium payments from Fox after the grace period set forth in the Expiration Notice and reinstated Fox's policy retroactive to the prior policy period's expiration date.

[Continued on next page.]

## IV. RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that the Notice of Motion and Motion for Summary Judgment by Plaintiff Daniel A. Fox (ECF No. 18) be **DENIED** and State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment (ECF No. 26) be **GRANTED**.

Dated: January _____30_____, 2015

_____*s/ Tony N. Leung*_____
Tony N. Leung
United States Magistrate Judge
for the District of Minnesota

*Fox v. State Farm Mutual Automobile*
*Insurance Company*
Case No. 13-cv-3231 (MJD/TNL)

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 16, 2015**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof.  Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Eighth Circuit Court of Appeals.